**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Michelle Smith,

Plaintiff,

v.

Spectrum Behavioral Health LLC, et al.,

Defendants.

No. CV-26-02111-PHX-DJH

**ORDER**

*Pro se* Plaintiff Michelle Smith filed this case against Defendants Spectrum Behavioral Health LLC ("Spectrum") and Mercy Care Plan[1] ("Mercy Care") (collectively, "Defendants") on March 27, 2026. (*See* Doc. 1). Mercy Care and Spectrum have each filed a Motion to Dismiss the First Amended Complaint ("FAC") (Docs. 27, 28), on August 10 and 11, 2026 respectively. Both Motions are fully briefed (*see* Docs. 32, 35, 36, 37) and are currently before the Court. Additionally, on September 11, 2026, Plaintiff filed a Motion for Leave to file Sur-Reply (Doc. 38) to Spectrum's Reply.[2]

## I. Background

Although the FAC is not a model of clarity, Plaintiff overarchingly asserts that "[t]his civil rights action challenges Defendants' repeated denial, obstruction, and failure

[1] Mercy Care notes that it was erroneously named "Mercy Care Plan" as it changed its name to Mercy Care in 2018. (*See* Doc. 27 at 1 n.1).

[2] Plaintiff's request to file a sur-reply is mainly based on Spectrum's newly raised "self-inflicted injury argument" and its mischaracterizations of the FAC. (*See* Doc. 38). However, Plaintiff already addressed the self-inflicted injury argument in her Response (Doc. 35 at 5), and the Court considered only the FAC's allegations in making its determinations, not any party's interpretations of the allegations. Therefore, Plaintiff's request to file a sur-reply is denied.

to provide medically necessary Medicaid behavioral health and respite services to Plaintiff's minor children," specifically her child "A.M." (Doc. 11 at ¶ 1).

Plaintiff is the parent of "minor children with documented developmental and behavioral disabilities who receive AHCCCS/DDD Medicaid services."[3] (*Id.* at ¶ 10). She claims that Spectrum "provides behavioral health and respite services pursuant to contracts with Mercy Care and AHCCCS," and Mercy Care "is an AHCCCS managed Care contractor responsible for service authorization, coverage determinations, and network adequacy." (*Id.* at ¶¶ 11–12). Both were acting "under color of state law while administering government-funded Medicaid benefits." (*Id.* at ¶ 13).

"Plaintiff requested that an out-of-network provider be considered when no in-network provider could meet A.M.'s needs[.]" (*Id.* at ¶ 27). Despite her repeated requests, Plaintiff states that "Defendants refused to authorize or include needed services on Individual Support Plans ('ISP'), labeled services as 'not covered,' failed to secure replacement providers, failed to provide services with reasonable promptness, and repeatedly refused to issue legally required written Notices of Action ('NOA')." (*Id.* at ¶¶ 2, 15). Without the requested NOAs, "Plaintiff was prevented from filing appeals, requesting hearings, or obtaining continuation of services." (*Id.* at ¶ 20).

Plaintiff further took issue with Spectrum's annual assessment process that used "rigid yes/no questions" and did "not allow [for] explanation[.]" (*Id.* at ¶ 31). "In response to Plaintiff's grievance regarding Spectrum's assessment process, Mercy Care stated that although a parent may decline to answer certain assessment questions, Spectrum may be unable to complete the assessment or ISP if 'required information' is not provided, which may delay or prevent authorization or continuation of services." (*Id.* at ¶ 35A). She was additionally informed that her A.M.'s annual assessment and ISP were not complete and therefore not valid, and absent an updated assessment and ISP, services requiring current

[3] Although not defined in the FAC, AHCCCS is the acronym for the Arizona Healthcare Const Containment System, which is the single state agency that administers Arizona's Medicaid Program under Title XIX of the Social Security Act. *Perry v. Chen*, 985 F. Supp. 1197, 1198 (D. Ariz. 1996) (defining AHCCCS). Similarly, "DDD" can be understood as Arizona Department of Economic Security's Division of Developmental Disabilities. (Doc. 28 at 3); A.R.S. § 36-2932.

authorization could not proceed. (*Id.* at ¶ 35B). Ultimately, Mercy Care "characterized the matter as 'not denied' or 'on hold pending clarification,' " and it concluded an NOA was not required "because no previously authorized service had been denied reduced, suspended, or terminated[.]" (*Id.* at ¶¶ 35C–D).

As a result of the foregoing, "Plaintiff's child A.M. has been without overnight behavioral health respite services for over One year despite ongoing requests, documented need, and repeated barriers related to disability-based provider refusals, staffing limitations, and provider claims of max capacity." (*Id.* at ¶ 24). This led to Plaintiff filing suit against Defendants on March 27, 2026. (*See* Doc. 1). The FAC was later filed and alleged the following claims against Defendants: 42 U.S.C. § 1983 due process violation; "failure to issue required notices of action," citing 42 C.F.R. §§ 431.210, 438.404; "denial of continuation of services," citing 42 C.F.R. § 431.230, "ACOM 414;" "failure to provide services with reasonable promptness," citing 42 U.S.C. § 1396a(a)(8); "arbitrary and unlawful assessment practices," and "declaratory and injunctive relief." (Doc. 11 at ¶¶ 41–47). Defendants each now move to dismiss the FAC in its entirety.

## II. Legal Standards

A motion to dismiss under Rule 12(b)(1) challenges the subject matter jurisdiction of the court. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039–40 (9th Cir. 2003). A jurisdictional attack can be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Facial attacks assert that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* With a factual attack, a court may review evidence beyond the complaint without converting the motion into one for summary judgment, and it "need not presume the truthfulness of the plaintiffs' allegations." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). The plaintiff must show that the court in question has jurisdiction to hear their case. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A court must dismiss a plaintiff's complaint if it fails to establish

subject matter jurisdiction. *Savage*, 343 F.3d at 1039 n.2.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim. *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). Complaints must make a short and plain statement showing that the pleader is entitled to relief for its claims. Fed. R. Civ. P. 8(a)(2). This standard does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Put differently, a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Dismissal of a complaint for failure to state a claim may be based on either the "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In reviewing a motion to dismiss, courts will "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But courts are not required "to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

**III. Discussion**

Defendants primarily contest Plaintiff's ability to bring claims on behalf of her children and her standing. Additionally, they argue that neither is a state actor and that the referenced statutes and regulations do not provide private rights of action. (*See generally* Docs. 27, 28). While Mercy Health and Spectrum raise some unique arguments, many of

their argued grounds for dismissal overlap. Therefore, where possible, the Court will address both Motions and Plaintiff's Responses together. The parties' jurisdictional arguments will be addressed before turning to failure to adequately plead.

**A. Ability to Sue on behalf of Others**

Spectrum and Mercy Health first argue that Plaintiff is not able to bring claims on behalf of her minor children. (Doc. 27 at 6; Doc. 28 at 6). In her Responses, Plaintiff does not contest that a *pro se* party cannot represent their minor children; instead, she characterizes the harms alleged as her own, not those of her children. (Doc. 32 at 2–31 Doc. 35 at 2–3). While Plaintiff's individual standing will be examined below, The Court agrees with Defendants that Plaintiff lacks the ability to sue on behalf of her children.

*Pro se* plaintiffs may only represent themselves and are prohibited from pursuing claims on behalf of others in a representative capacity. *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008) (collecting cases and noting that courts routinely prohibit pro se plaintiffs from representing others); *Russell v. United States*, 308 F.2d 78, 79 (9th Cir. 1962) ("A litigant appearing [pro se] has no authority to represent anyone other than himself"). This prohibition extends to a *pro se* plaintiff's ability to sue on behalf of their minor children. The Ninth Circuit has held that "a parent or guardian cannot bring an action on behalf of a minor child without retaining a lawyer." *Johns v. Cnty. of San Diego*, 114 F.3d 874, 877 (9th Cir. 1997).

Here, a plain reading of the FAC reveals that this case concerns the medical services provided to Plaintiff's minor child, A.M. Therefore, the alleged due process, "failure to issue required notices of action," "denial of continuation of services," "failure to provide services with reasonable promptness," "arbitrary and unlawful assessment practices," and "declaratory and injunctive relief" claims necessarily concern A.M.'s rights and injuries. (Doc. 11 at ¶¶ 41–47). To the extent that these claims are brought on behalf of A.M. or her other children, they are dismissed.

**B. Standing**

The next issue is whether Plaintiff has standing to bring her asserted claims.

Defendants argue that she lacks standing as the alleged harms belong to A.M. rather than Plaintiff. However, Plaintiff maintains that she has alleged concrete injuries to herself. (Doc. 32 at 3–4; Doc. 35 at 3–6).

Article III of the Constitution limits federal courts' jurisdiction to "Cases" and "Controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016). One of the essential components of the Article III case or controversy requirement is that a plaintiff have standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To demonstrate standing, a plaintiff must show: (1) that he "suffered an injury in fact" that is "concrete and particularized"; (2) "a causal connection between the injury and the conduct complained of"; and (3) that it is "likely ... that the injury will be redressed by a favorable decision." *Id.* at 560–61 (internal quotation marks omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice," *id.*, but "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068–69 (9th Cir. 2011) (cleaned up).

First, an injury in fact must be real and not abstract. *Food and Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). "The injury also must be particularized; the injury must affect 'the plaintiff in a personal and individual way' and not be a generalized grievance." *Id.* (quoting *Lujan*, 504 U.S. at 560, n.1). Upon review of the FAC, the rights and protections asserted are not Plaintiff's, meaning that injuries based on their violation are similarly not particularized to Plaintiff.

As stated above, the FAC concerns the interruption of A.M.'s care, so any injury concerning the loss, delay, or disruption of medical services or other benefits is an injury to A.M. (*See* Doc. 11 at ¶¶ 24–27, 29–29D). Beyond bare assertions about herself and her children, Plaintiff at no point alleged that her own healthcare services were denied or suspended, nor that she was the beneficiary of the contested Medicaid services. (*See generally id.*). Therefore, allegations such as "Defendants prevented Plaintiff from

exercising appeal rights, continuation-of-services protections, and fair hearing procedures guaranteed by federal Medicaid law" or "Plaintiff and her children have suffered…loss of medically necessary care," do not state an injury of fact as to Plaintiff. (*Id.* at ¶¶ 3, 35); *See McCullum v. Orlando Regl. Healthcare System, Inc.*, 768 F.3d 1135, 1145 (11th Cir. 2014) (determining that the parents and sister of a disabled individual lacked standing to assert claims under the ADA and RA where there were no allegations that they were "excluded, denied benefits to, or discriminated against" based on their association).

Again, the only loss of care alleged is that of her children, particularly A.M., and consequently the administrative protections Plaintiff claims she was deprived of are also those of her children. *See Paschall v. Andrade*, 2025 WL 3188738, at *3 (E.D. Wash. Nov. 14, 2025) ("[Plaintiff] also lacks standing over her claims arising from [the] refusal to transfer her children's cases to Kansas, as she does not demonstrate she was personally harmed by the refusal to transfer the case or Kansas's consequent refusal to provide A.P. services."); *J.R. by and through Rizzi v. Palos Verdes Peninsula Unified Sch. Dist.*, 2021 WL 4553056, at *2 (C.D. Cal. Oct. 5, 2021) ("[Plaintiff's] interest as a mother in the harm that she alleges her minor child suffered is insufficient to show that [Plainitff] (as distinct from her minor child) personally suffered a particularized or concrete 'injury in fact' that is 'fairly traceable' to the challenged policy of the School District.").

Moreover, assuming *arguendo* that the rights and procedural protections Plaintiff claims were violated were hers instead of the beneficiary's, several issues still remain. As Spectrum points out, "[t]he notice requirements of the Medicaid Act are triggered by an 'action,' " *K.W. ex rel. D.W. v. Armstrong*, 789 F.3d 962, 970 n.2 (9th Cir. 2015) (citing 42 C.F.R. § 431.206(c)(2)), which is defined, in part, as a "termination, suspension of, or reduction in covered benefits or services, including benefits or services for which there is a current approved prior authorization[.]" 42 C.F.R. § 431.201. Once there is such an action, the agency is required to provide the beneficiary with an NOA informing them of their right to a hearing and how to obtain one. 42 C.F.R. § 431.206(c)(2); *see also* §§ 431.210–14. Here, Plaintiff has not clearly alleged a termination, suspension, or reduction

in benefits that would trigger the requirement of an NOA (see generally Doc. 11). This lack of definitive action renders an injury claimed by Plaintiff conjectural. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (explaining that the doctrine of ripeness allows federal courts to "dispose of matters that are premature for review because the plaintiff's purported injury is too speculative and may never occur"). Lastly, the FAC makes it clear that Plaintiff's presumed injury might indeed be self-inflicted as A.M.'s ISP was not completed by Plaintiff, which she was informed "may delay or prevent authorization of service."[4] (Doc. 11 at ¶¶ 35A–B); *Intl. Partners for Ethical Care Inc v. Ferguson*, 146 F.4th 841, 848 (9th Cir. 2025) (self-inflicted harm insufficient to establish standing). Plaintiff's failure to complete the "ISP or assessment" also cuts against the traceability requirement of standing. *Clapper v. Amnesty Intl. USA*, 568 U.S. 398, 416 (2013) (clarifying that self-inflicted harm is not traceable to the defendant).

At most, the FAC states that Plaintiff has experienced "increased caregiving strain over periods of time" and "emotional distress." (Doc. 11 at ¶ 35). However, these bald assertions do not suffice to state an injury in fact as to each asserted claim. *Morgan v. City of New York*, 166 F. Supp. 2d 817, 819 (S.D.N.Y. 2001) (dismissing a § 1983 claim because "[t]here [was] no indication that Angela Morgan suffered any harm other than emotional distress due to the alleged discrimination against her daughter"); *Maghoney v. Dotdash Meredith, Inc.*, 2026 WL 497402, at *7 (S.D. Cal. Feb. 23, 2026) (conclusory allegations of "emotional distress" do not suffice to show injury in fact) (collecting cases). In sum, even construing the FAC in its most favorable light, Plaintiff has failed to plead an injury in fact and thus lacks standing.

Failure to show injury in fact, alone, warrants dismissal. However, briefly, the Court notes that Spectrum also convincingly argues that even assuming Plaintiff showed an injury in fact, the alleged injury is not redressable by the Court. (Doc. 28 at 11). Plaintiff asks the Court to "issue proper NOAs, authorize and place medically necessary services on

[4] In the FAC and her Response, Plaintiff states that she took issue with the yes/no format of the assessment that did not provide room for explanation. (Doc. 35 at 5; Doc. 11 at ¶ 31). However, these issues aside, there is no claim, in either the FAC or the Response, that Plaintiff did complete the required assessment.

ISPs, restore respite and behavioral services, secure adequate providers, provide continuation of services during appeals, and comply with federal Medicaid law." (Doc. 11 at ¶ 47). But, under the Medicaid Act, these requests are the province of the state agency tasked with the administration of the plan. *See* 42 C.F.R. § 431.10; 42 U.S.C. §1396a. As a result, Plaintiff needs to comply with her obligations[5] as to any assessment and exhaust her administrative remedies if need be.

**C. Failure to Plead**

Because Plaintiff does not have standing, no further arguments need to be considered. *Maya*, 658 F.3d at 1067 ("[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."). Yet, for completeness's sake, the Court will address several of the 12(b)(6) arguments raised by Defendants.

Defendants both argue that they are not state actors and therefore a § 1983 claim cannot be maintained against them. (Doc. 27 at 7–10; Doc. 28 at 12–14). While Plaintiff disagrees with Defendants' assessments, the only pertinent allegations in the FAC are insufficient to demonstrate that either Defendant is a state actor or was acting as one. Plaintiff has alleged that Defendants were "acting under the color of state authority as AHCCCS/DDD Medicaid contractors," "acted under color of state law while administering government-funded Medicaid benefits," or had contracts with AHCCS. (Doc. 11 at ¶¶ 5, 11–13). Nonetheless, the receipt of state funds nor the existence of a government contract alone qualifies either Defendant as a state actor. *See Blum v. Yaretsky*, 457 U.S. 991, 1005-12 (1982) (holding that a nursing home providing Medicaid benefits is not a state actor); *Scott v. Eversole Mortuary*, 522 F.2d 1110, 1114–15 (9th Cir. 1975) (government contract by itself is insufficient). Given that there are no other allegations concerning Defendants' state actor status, Plaintiff has failed to allege a required element of a § 1983 claim.

Finally, Plaintiff states that her FAC partially arises under "the Medicaid Act and

---

[5] In Plaintiff's own words, "Spectrum stated it could not move forward with referrals, service additions, or continuation of services without a signed ISP, while Mercy Care stated no Notice of Action or adverse benefit notice would issue unless a provider submitted a request and the plan then denied it." (Doc. 11 at ¶ 38).

federal regulations including 42 C.F.R. §§ 431.210, 431.230, and 438.404." (Doc. 11 at ¶ 8). Her Counts II–V also identify these regulations and specifically 42 U.S.C. § 1396a(a)(8). (*See id.* at 11). Presently, Defendants argue that the Medicaid Act and its effectuating regulations do not provide private rights of action, and the Court agrees. The Supreme Court, in *Medina v. Planned Parenthood S. A.*, 606 U.S. 357 (2025), has already concluded that Section 1396a(a)(23)(A) does not clearly and unambiguously confer an individual right. *Id.* at 385–86. Finding that Medina controls, other courts have decided the same as to Section 1396a(a)(8). *See Lancaster by and through Green v. Cartmell*, 162 F.4th 1063, 1068–70 (10th Cir. 2025), *cert. denied sub nom. Lancaster v. Cartmell*, 146 S. Ct. 2807 (2026). As to the cited regulations, "[l]anguage in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001). Because the statute relied on by Plaintiff did not confer a private right of action, the regulations, likewise, do not create a private right of action. Thus, Plaintiff's Counts II–V fail to state a claim.

While the Court understands the healthcare system can be difficult to navigate, such sympathy does not negate the jurisdictional or pleading defects that are apparent in this matter. All of which warrant and even necessitate dismissal here.

Accordingly,

**IT IS ORDERED** that Defendant Mercy Care's Motion to Dismiss (Doc. 27) and Defendant Spectrum's Motion to Dismiss (Doc. 28) are **GRANTED**. This matter is dismissed, and the Clerk of Court is kindly directed to terminate this matter.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Limited Sur-Reply (Doc. 38) is **DENIED**.

Dated this 13th day of November, 2026.

Honorable Diane J. Humetewa
United States District Judge